BLOCK & LEVITON LLP
Jeffrey C. Block, Esq.
(*pro hac vice* application to be filed)
Joel A. Fleming, Esq.
(*pro hac vice* application to be filed)
155 Federal Street, Suite 400
Boston, Massachusetts 02110
Tel: (617) 398-5600
Fax: (617) 507-6020
jeff@blockesq.com
joel@blockesq.com

LAW OFFICE OF TELIA U. WILLIAMS
Telia U. Williams, Esq.
Nevada Bar No. 9359
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Tel: (702) 835-6866
Fax: (702) 363-8851
telia@telialaw.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| **Glen Hartsock**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**Spectrum Pharmaceuticals, Inc.**, and **Rajesh Shrotriya**,<br><br>Defendants. | Case No. _____<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>Jury Trial Demanded |

Plaintiff Glen Hartsock ("Plaintiff"), by and through his attorneys, alleges upon personal knowledge as to himself, and upon information and belief as to all other matters, based upon the investigation conducted by and through his attorneys, which included, among other things, a review of documents filed by Defendants (as defined below) with the United States Securities and Exchange Commission (the "SEC"), news reports, press releases issued by Defendants, and other publicly available documents, as follows:

LITTLER MENDELSON, P.C.
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169-5937
702.862.8800

## NATURE AND SUMMARY OF THE ACTION

This is a federal securities class action on behalf of all investors who purchased or otherwise acquired Defendant Spectrum Pharmaceuticals, Inc. ("Spectrum" or the "Company") common stock between February 28, 2013 through September 14, 2015, inclusive (the "Class Period"). This action is brought on behalf of the Class for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a) and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

This is a straightforward case of fraud. In December 2012, after reviewing the results of a Phase 3 clinical trial, the Food and Drug Administration ("FDA") told Defendants "NOT to submit" a New Drug Application ("NDA") for one of their two lead product candidates, apaziquone (a treatment for non-muscle invasive bladder cancer).

Defendants ignored the FDA's advice and were entitled to do so. What they were not entitled to do was lie to investors. But that is exactly what they did. Throughout the Class Period, Defendants made material misstatements regarding their meeting with the FDA, suggesting to investors that the FDA would accept an NDA and failing to disclose that the FDA had told the Company "NOT to submit" one. When the truth was revealed, the Company's stock price plummeted.

## JURISDICTION AND VENUE

The federal law claims asserted herein arise under §§ 10(b) and 20(a) of the Exchange Act, 15 U.S.C. § 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5, as well as under the common law.

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and § 27 of the Exchange Act, 15 U.S.C. § 78aa.

This Court has jurisdiction over each Defendant named herein because each Defendant is an individual or corporation who has sufficient minimum contacts with this District so as to render the

exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

Venue is proper in this District pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1931(b), as the Company has its principal executive offices located in this District and conducts substantial business here.

In connection with the acts, omissions, conduct and other wrongs in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce including but not limited to the United States mail, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

Plaintiff is an individual residing in Glen Burnie, Maryland. Plaintiff acquired and held shares of the Company at artificially inflated prices during the Class Period and has been damaged by the revelation of the Company's material misrepresentations and material omissions.

Defendant Spectrum is a Delaware corporation with its principal place of business in Henderson, Nevada. The Company trades on the NASDAQ stock exchange under the ticker symbol "SPPI."

Defendant Rajesh C. Shrotriya is, and at all relevant times, was Spectrum's Chief Executive Officer.

Shrotriya, because of his position at the Company, possessed the power and authority to control the content and form of the Company's annual reports, quarterly reports, press releases, investor presentations, and other materials provided to the SEC, securities analysts, money and portfolio managers and investors, *i.e.*, the market. Shrotriya made or authorized the making of the statements alleged herein to be misleading prior to their issuance and had the ability and opportunity to prevent the issuance of these false statements or to cause them to be corrected. Because of his

position with the Company and his access to material non-public information available to him but not to the public, Shrotriya knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were false and misleading. Shrotriya is liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

Spectrum is a pharmaceutical company. According to its most recent Form 10-K, it purported to have "two drugs in late stage development": (1) "SPI-2012 … being developed for chemotherapy-induced neutropenia in patients with breast cancer" and (2) "EOQUIN® (previously referred to as APAZIQUONE for intravesical instillation) … being developed for immediate intravesical instillation post-transurethral resection of bladder tumors in patients with non-muscle invasive bladder cancer."

In 2012, Spectrum completed Phase 3 clinical trials of apaziquone. In December 2012, it met with the FDA to discuss those results. According to slides presented by the FDA at the Oncologic Drugs Advisory Committee ("ODAC") meeting on September 14, 2016, regulators told Spectrum that, based on the Phase 3 data, it should not submit a New Drug Application ("NDA"):

Regulatory History

- Pre-NDA meeting December 2012

    o Topline results: Each study failed to meet the primary endpoint.

    o We advised NOT to submit the NDA based on this data.

Defendants ignored the Agency's advice. They were allowed to do so.

What they were not allowed to do is lie to investors. And that is exactly what they did. On February 28, 2013, the Company issued a Form 10-K, signed by Shrotriya, which stated: "In April 2012, we announced that the single instillation Phase 3 clinical trials for apaziquone did not meet their primary endpoint however the pooled data from the studies did show a statistically significant

4.

treatment effect. A meeting with the FDA was held in December 2012 to discuss the results from these clinical trials. Based on the discussions with the FDA, we understand that the FDA can accept the NDA filing with the current Phase III data and will likely convene an Advisory Committee meeting." This statement was false and misleading because it failed to disclose that the FDA told Spectrum "NOT to submit the NDA[.]"

The Company repeated this misstatement, verbatim, in the following documents, both of which were signed by Shrotriya: Form 10-Q filed May 9, 2013 and Form 10-Q filed August 9, 2013. Shrotriya repeated this lie in an earnings call with analysts on May 7, 2015. On that call, he stated:

> You have followed apaziquone for a long time, and so I'll just give you the highlights of the trial. You remember the last trial, the endpoint of the trial was relapse rate at two years. And when you look at relapse rate at two years, we missed significance in each of those two studies, which were 500 patient trials.
>
> But when you combine the two studies, the data was highly significant at p-value 0.017. So we took this data, met with the FDA, and our understanding is and our decision is that we can go ahead and file the NDA with this drug.

This statement was false and misleading because it failed to disclose that the FDA told Spectrum "NOT to submit the NDA[.]"

In December 2015—defying the FDA's advice—Spectrum submitted an NDA for apaziquone.

On September 14, 2016, the FDA's Oncologic Drugs Advisory Committee held a meeting to discuss that application. During the process of the Committee's consideration, FDA staff presented the slide referenced above, which disclosed that the FDA told Spectrum "NOT to submit the NDA." The Committee voted to recommend that the NDA be denied on the basis that apaziquone had "not shown substantial evidence of a treatment effect over placebo in patients with non-muscle invasive bladder cancer (NMIBC)."

The Company's stock dropped sharply as a result of this corrective disclosure. After closing at $5.49 per share on September 13, 2016, the stock traded as low as $4.69 per share on September 14, 2016, after the corrective disclosures, and has closed at or below $4.85 per share every day since.

Reaction from journalists and analysts has made clear that the market was misled by Defendants' material misstatements and omissions. On September 16, 2016, Adam Feuerstein, a columnist for TheStreet, published an article entitled "Spectrum Pharma, FDA and the Buried Truth About a Bladder Cancer Drug Meeting," stating that Shrotriya's statements on the May 2015 earnings call were "not a fully truthful summary of the FDA's guidance to Spectrum," that Spectrum "Spectrum hid[] this FDA recommendation from investors," and that "Spectrum join[ed] an unacceptably long list of drug and biotech companies hurting investors by failing to be fully transparent about their communications with the FDA."

On September 19, 2016, an analyst named Samreen Agha published an article on the investment website Seeking Alpha, discussing the failure to disclose the FDA's guidance and stating "management is not trustworthy," "the communication pattern with the investors is also flawed," and "the red flags must be addressed and … management has to work on its communication with investors … to improve the trust-deficit."

## CLASS ACTION ALLEGATIONS

Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of all persons and entities who purchased or otherwise acquired Spectrum common stock during the Class Period. Excluded from the Class are Defendants, directors and officers of the Company, as well as their families and affiliates.

The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

LAW OFFICE OF TELIA U WILLIAMS
10161 PARK RUN DRIVE
SUITE 150
LAS VEGAS, NV 89145

There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

    a. Whether the Exchange Act was violated by Defendants;

    b. Whether Defendants omitted and/or misrepresented material facts;

    c. Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

    d. Whether Defendants knew or recklessly disregarded that their statements were false and misleading;

    e. Whether the price of the Company's stock was artificially inflated; and

    f. The extent of damage sustained by Class members and the appropriate measure of damages.

Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct alleged herein.

Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests that conflict with those of the Class.

A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

**FRAUD ON THE MARKET**

Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine that, among other things:

7.

g. Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

h. The omissions and misrepresentations were material;

i. The Company's common stock traded in efficient markets;

j. The misrepresentations alleged herein would tend to induce a reasonable investor to misjudge the value of the Company's common stock; and

k. Plaintiff and other members of the class purchased the Company's common stock between the time Defendants misrepresented or failed to disclose material facts and the time that the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

At all relevant times, the markets for the Company's stock were efficient for the following reasons, among others: (i) the Company filed periodic public reports with the SEC; and (ii) the Company regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news ire services and through other wide-ranging public disclosures such as communications with the financial press, securities analysts, and other similar reporting services. Plaintiff and the Class relied on the price of the Company's common stock, which reflected all information in the market, including the misstatements by Defendants.

**NO SAFE HARBOR**

The statutory safe harbor provided for forward-looking statements under certain conditions does not apply to any of the allegedly false statements pleaded in this Complaint. The specific statements pleaded herein were not identified as forward-looking statements when made.

To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

## LOSS CAUSATION

On September 14, 2016 the FDA revealed that, contrary to the Company's public statements, it had advised the Company "NOT to submit the NDA." After closing at $5.49 per share on September 13, 2016, the stock traded as low as $4.69 per share on September 14, 2016, after the corrective disclosures, and has closed at or below $4.85 per share every day since. This decline is directly attributable to the corrective disclosure.

## CAUSES OF ACTION

### Count I
### Violation of § 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder
### (Against All Defendants)

Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

Defendants violated § 10(b) of the Exchange Act and Rule 10b-5 in that they (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon those who purchased or otherwise acquired the Company's securities during the class period.

Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for the Company's common stock. Plaintiff and the Class would not have purchased the Company's common stock at the price paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

## Count II
### Violation of § 20(a) of the Exchange Act
### (Against Shrotriya)

Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

Shrotriya acted as a controlling person of the Company within the meaning of § 20(a) of the Exchange Act as alleged herein. By virtue of his high-level position at the Company, Shrotriya had the power and authority to cause or prevent the Company from engaging in the wrongful conduct complained of herein. Shrotriya was provided with or had unlimited access to the documents where false or misleading statements were made and other statements alleged by Plaintiffs to be false or misleading both prior to and immediately after their publication, and had the ability to prevent the issuance of those materials or to cause them to be corrected so as not to be misleading.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     determining that this action is a proper class action pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class as defined herein, and a certification of Plaintiff as class representative pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointment of Plaintiff's counsel as Lead Counsel;

(b)     awarding compensatory and punitive damages in favor of Plaintiff and the other class members against all Defendants, jointly and severally, for all damages sustained as a

result of Defendants' wrongdoing, in an amount to be proven at trial, including pre-judgment and post-judgment interest thereon.

   (c) awarding Plaintiff and other members of the Class their costs and expenses in this litigation, including reasonable attorneys' fees and experts' fees and other costs and disbursements; and

   (d) awarding Plaintiff and the other Class members such other relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury in this action of all issues so triable.

Respectfully submitted, this 28th day of September, 2016

/s/*Telia U. Williams*
Telia U. Williams, Esq.
LAW OFFICE OF TELIA U. WILLIAMS
10161 Park Run Drive, Suite 150
Las Vegas, NV 89145
Tel.: (702) 835-6866
Fax: (702) 363-8851

BLOCK & LEVITON LLP
Jeffrey C. Block, Esq.
(*pro hac vice* application to be filed)
Joel A. Fleming, Esq.
(*pro hac vice* application to be filed)
155 Federal Street, Suite 400
Boston, Massachusetts 02110
(617) 398-5600 phone
(617) 507-6020 fax

*Attorneys for Plaintiff*